**WEISBERG LAW**
Matthew B. Weisberg
Attorney ID No. 85570
L. Anthony DiJiacomo, III
Attorney ID No. 321356
7 South Morton Ave. 19070
Morton, PA
610-690-0801
Fax: 610-690-0880
*Attorneys for Plaintiff*

**SCHAFKOPF LAW, LLC**
Gary Schafkopf
Attorney ID No. 83362
11 Bala Ave
Bala Cynwyd, PA 19004
610-664-5200 Ext 104
Fax: 888-238-1334
*Attorney for Plaintiff*

**MILDENBERG LAW FIRM**
Brian R. Mildenberg
Attorney ID No. 84861
1735 Market Street, Ste. 3750
Philadelphia, PA 19103
*Attorney for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**LATASHA STEVENS**
8110 Lindberg Blvd
Philadelphia, PA 19153

Plaintiff,

v.

**CITY OF PHILADELPHIA d/b/a PHILADELPHIA POLICE DEPART.**
1515 Arch St, 17th Floor
Philadelphia, PA 19102

And

**INSPECTOR ALTOVISE LOVE-CRAIGHEAD**
In her individual and official capacity as an officer for the Philadelphia Police Depart.
401 N 21st Street
Philadelphia, PA 19130

And

No.: 2:17-cv-~~04852~~ 4853-JD

**JURY TRIAL OF TWELVE (12) JURORS DEMANDED**

**LT. KENORA SCOTT** :
In her individual and official capacity as an :
officer for the Philadelphia Police Depart. :
39th St and Lancaster Ave. :
Philadelphia, PA 19104 :

And :

**CAPTIN JARREAU THOMAS** :
In his individual and official capacity as an :
officer for the Philadelphia Police Depart. :
39th St and Lancaster Ave. :
Philadelphia, PA 19104 :

And :

**JOHN DOES, 1-10** :

Defendants. :

---

**FIRST AMENDED**
**CIVIL ACTION COMPLAINT**

## I. INTRODUCTION

Plaintiff, LaTasha Stevens, by and through her undersigned attorneys, brings this action against her employer, the City of Philadelphia ("Defendant") and its agents who were specifically involved, Inspector Altovise Love-Craighead, Lt. Kenora Scott, Captain Jarreau Thomas (collectively, "Defendants"). Plaintiff is a highly regarded veteran with Defendant's Police Department. Plaintiff has endured systemic retaliation by Defendants, who are her supervisors, due to her assisting a fellow officer in filing a formal complaint against a Police Sergeant who had been sexually harassing her.

## II. PARTIES

1. Plaintiff, LaTasha Stevens is an individual residing at the above captioned address and citizen of Pennsylvania.

2. Defendant, City of Philadelphia, doing business as the Philadelphia Police Department, is a government agency doing business at the above captioned address.

3. Defendant Altovise Love-Craighead, is an adult individual who, at all times material herein, acted individually, as well as in her individual capacity as an agent, servant, workman, or employee of, the Philadelphia Police Department acting under color of State law as Captain for the 16th District and currently as an Inspector for the Central Division.

4. Defendant, Kenora Scott, is an adult individual who, at all times material herein, acted individually, as well as in her individual capacity as an agent, servant, workman, or employee of, the Philadelphia Police Department acting under color of State law as a Lt. for the 16th District.

5. Defendant Jarreau Thomas, is an adult individual who, at all times material herein, acted individually, as well as in his individual capacity as an agent, servant, workman, or employee of, the Philadelphia Police Department acting under color of State law as a Captain of the 16th District.

6. Defendants, John Does 1-10, is a moniker/fictitious name for individuals and entities currently unknown but will be substituted when known, as affiliated, associated or liable hereunder for the reasons set forth below or inferred therefrom. Each of these parties are incorporated as Defendants in each and every count and averment listed above and below.

## III. JURISDICTION & VENUE

7. The causes of action which form the basis of this matter arise under Title VII, Section 1983, the PHRA, and the PFPO.

8. The District Court has jurisdiction over Count I (Title VII) pursuant to 42 U.S.C. §2000e-5 and 28 U.S.C. §1331.

9. The District Court has jurisdiction over Count II (Section 1983) pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1333.

10. The District Court has supplemental jurisdiction over Count III (PHRA) pursuant to 28 U.S.C. §1367.

11. The District Court has supplemental jurisdiction over Count IV (PFPO) pursuant to 28 U.S.C. §1367.

12. Venue is proper in the District Court under 28 U.S.C. §1391(b) and 42 U.S.C. §2000(e)-5(f).

13. All conditions precedent, including the EEOC Right to Sue, have been satisfied; the EEOC issued a right to sue letter on or about August 1, 2017.

## IV. OPERATIVE FACTS

14. Plaintiff, LaTasha Stevens, is a Philadelphia Police Platoon Sergeant for the 16th District in Southwest Philadelphia.

15. Prior to the retaliation described below, Plaintiff was a highly-regarded, career officer who was renowned for performing her job duties "by the book." Prior to receiving her 2016 employee assessment, Plaintiff received high praise from her supervisors in her annual reviews, which included statements such as:

- "You are definitely an asset to any platoon." 2010 Annual Review;

- "You have developed a good working relationship with your subordinate officers. You have a good combination of technical and people skills. Keep up the excellent work." 2013 Annual Review;

- You have proven that you possess the necessary leadership skills that are needed to be a successful supervisor." 2013 Annual Review;

- "You have proven to be an asset, as well a [sic] committed supervisor, who has demonstrated reliability and dependable [sic]. Your motivation and drive is excellence [sic] and should be copied by others. You get along well

> with myself and other supervisors and officers… It is a pleasure to work with you." 2014 Annual Review.

16. However, Plaintiff's employee reviews drastically changed in retaliation of the underlying event.

**UNDERLYING EVENT**

17. On or about January 27, 2016, Plaintiff received phone call from non-party, Officer Jessica Roseberry, also from the 16th District.

18. Officer Roseberry, began to confide in Plaintiff that she was being sexually harassed by non-party, Sergeant Yusef Copper also of the 16th District.

19. Officer Roseberry alleged that Sgt. Cooper had once asked her if she was wearing a vest because her "titties were big". On another occasion, Sgt. Cooper knocked on the ladies' locker room door and attempted to enter – purportedly to give Officer Roseberry an assignment. On other occasions, Sgt. Cooper made Officer Roseberry uncomfortable by suggestively questioning who was picking Officer Roseberry up after work, among other improper incidents between the two officers.

20. Prior to receiving the January 27, 2016 phone call, Plaintiff had very little interaction with Officer Roseberry aside from cordial conversations in passing while working in the 16th District.

21. The Philadelphia Police Department Office of Professional Responsibility ("OPR") is the central control agency and repository in all cases involving Equal Employment Opportunity ("EEO") related complaints.

22. Per Directive 8.7-5 §4J "Supervisors who become aware of an EEO complaint from any source must report this to the Office of Professional Responsibility *regardless of whether the complainant desires to pursue the complaint*." (emphasis added).

23. Plaintiff advised Officer Roseberry that given the nature of Sgt. Cooper's actions she must file a report with the OPR.

24. Officer Roseberry did not want Plaintiff to report the incident to the OPR due to fear of some type of retaliation from Sgt. Cooper's brother who is also a high-ranking Philadelphia Police Officer.

25. Nonetheless, in conformance with Directive 8.7-5 §4J, on or about January 27, 2016 Plaintiff filed a formal notice with the Office of Professional Responsibility.

26. On February 5, 2016 Plaintiff provided a formal statement regarding her conversation with Officer Roseberry to the Philadelphia Police Internal Affairs Division.

27. Critically, Officer Roseberry had informed Defendant, Captain, now Inspector, Altovise Love-Craighead and Defendant, Lt. Kenora Scott of Sgt. Cooper's actions.

28. Upon information and belief, Defendant, Love-Craighead and Defendant, Scott were aware of and trained on Directive 8.7-5 §4J.

29. However, in violation of Directive 8.7-5 §4J, Defendant, Love-Craighead did not complete a EEO complaint despite knowledge of Sgt. Cooper's actions.

30. Likewise, in violation of Directive 8.7-5 §4J, Defendant, Scott did not complete a EEO complaint despite knowledge of Sgt. Cooper's actions.

31. Upon information and belief, Defendants failure to act in conformity with Directive 8.7-5 §4J resulted in review of Defendants' actions by Internal Affairs.

**RETALIATION**

32. Following Plaintiff's report in conformance with Directive 8.7-5 §4J, Plaintiff was approached by her supervisor, non-party, Lt. Beverly Pembrook, who chastised Plaintiff for making the EEO complaint in conformance with Directive 8.7-5 §4J.

33. Lt. Pembrook told Plaintiff that she should have made the report up the chain of command, rather than following Directive 8.7-5 §4J.

34. Lt. Pembrook told Plaintiff that Defendant, Love-Craighead had confronted and chastised Lt. Pembrook for Plaintiff following Directive 8.7-5 §4J, rather than allowing Defendant, Captain, now Inspector Love-Craighead to handle the matter.

35. Following the EEO report, Defendants, Love-Craighead and Scott began taking retaliatory actions towards Plaintiff.

36. Plaintiff believes, and therefore avers, that Defendant, Love-Craighead systematically slandered and continues to systematically slander Plaintiff to her fellow Philadelphia police officers, both inside and outside of the 16th District, to Plaintiff's career detriment.

37. Plaintiff believes, and therefore avers, that Defendant, Scott has systematically slandered and continues to systematically slander Plaintiff to her fellow Philadelphia police officers, both inside and outside of the 16th District, to Plaintiff's career detriment.

38. Prior to the confrontation with Lt. Pembrook concerning Defendant, Love-Craighead outrage, fellow officers had a "good working relationship" with Plaintiff.

39. However, since the confrontation with Lt. Pembrook concerning Defendant, Love-Craighead outrage, fellow officers increasingly treat Plaintiff with suspicion and distance that was never there before.

40. In an effort to escape the negative environment created by Defendants in the 16th District, on or about April 1, 2016, Plaintiff requested a transfer to the 1st District, which was closer to her home and was the District she began her career in as a Philadelphia Police Officer.

41. Department policy requires an officer to submit their request to their Captain to determine if they are approved for an interview with the Captain of the district they wish to

transfer to. If approved for an interview, the officer will interview with the Captain of the district they wish to transfer to and a decision will then be made by the Captain of the transferring district if he/she approves of the transfer.

42. On or about April 1, 2016, Plaintiff submitted her request in writing as required to her the commanding officer, Defendant, Love-Craighead.

43. Defendant, Love-Craighead approved the requests allowing the request to move onto the next stage.

44. However, Plaintiff believes, and therefore avers, that Defendant, Love-Craighead informally told non-party, 1st District Captain, Captain Francis, that Plaintiff was not a "team-player" and would "follow the book."

45. Upon information and belief, Defendant, Love-Craighead and Captain Francis are close, personal friends who improperly exchange information regarding fellow officers in an effort to ensure their District is comprised of "team-players." However, Plaintiff was unaware of this when she submitted her request for transfer to the 1st District.

46. Captain Francis' office called and arranged a 4pm interview in May 2016.

47. However, upon Plaintiff's arrival at the interview, Captain Francis was not present and her office claimed not to have knowledge of the interview.

48. After waiting for more than an hour, Captain Francis showed up. It became obvious that Captain Francis was aware of the interview appointment.

49. During the interview, Captain Francis was aggressive and hostile towards Plaintiff.

50. At one point, Captain Francis asked Plaintiff why she was requesting a transfer.

51. Plaintiff responded that she wanted the transfer because the 1st District was closer to her home and was where she began her career as a Philadelphia Police Officer. Despite these being

common and well-accepted reasons for such a transfer, Captain Francis demanded a different answer.

52. Plaintiff again told Captain Francis that she wanted the transfer because the 1st District was closer to her home and was where she began her career as a Philadelphia Police Officer. Again, despite these being common and well-accepted reasons for such a transfer, Captain Francis demanded a different answer.

53. Feeling cornered, Plaintiff admitted that she was seeking the transfer because she wanted a change. Unimpressed with such a non-controversial response, Captain Francis again demanded a full explanation.

54. Finally, Plaintiff admitted that she was unhappy at the 16th District, though she did not explain the foregoing. In response, Captain Francis said, "That's what I thought", making subtle reference to prior knowledge of the foregoing.

55. Captain Francis then began to ask Plaintiff "Have you asked anyone about me? Because you might be jumping from the frying pan to the fire."

56. Plaintiff had not asked anyone about Captain Francis, instead, believing at the time that Captain Francis would give Plaintiff a fair shake and not understanding the full influence and reach of Defendants.

57. The Plaintiff concluded the interview and returned to the 16th District confused.

58. However, after speaking with fellow officers, Plaintiff learned that Defendant, Love-Craighead and Captain Francis are close friends in and outside of work and that both seek "team players".

59. Understanding that Plaintiff would be transferring from one bad environment to another, Plaintiff withdrew her request to be transferred to the 1st District. Instead, Plaintiff decided to

stick it out in the 16th District in an attempt to once-again-prove she was an excellent officer, supervisor, and leader – just as her supervisors had described her prior to the EEO complaint.

60. Plaintiff believes, and therefore avers that Defendant, Love-Craighead wanted to keep Plaintiff in the 16th District in order to make her work conditions significantly difficult in order to cause Plaintiff to resign her position as an officer.

61. Philadelphia Police Department has a practice of requesting officers to perform a sick check on fellow police officers who called out sick from duty to ensure the officers are actually sick and not simply skipping work. Such sick checks, in practice, only occur during the shift that the officer had called out of.

62. However, in practice, the Department does not perform sick-checks on supervisors or higher officers of the Department; i.e. Plaintiff was not subjected to such practices.

63. Nonetheless, following the Plaintiff's report, Defendant, Love-Craighead noted that Plaintiff was out sick on February 25-26, 2016 and ordered sick checks on Plaintiff – even though she was a Sargent / Supervisor. In fact, Defendant, Love-Craighead ordered the sick check to occur on every shift that occurred during February 25-26, 2016.

64. However, on February 25, 2016, other officers, who called out as sick, were not checked on.

65. On April 22, 2016, Plaintiff was again sick and called out of work. Again, Defendant, Love-Craighead ordered officers to perform a sick check on Plaintiff on every shift that occurred during April 22, 2016.

66. However, on April 22, 2016, other officers, who called out as sick, were not checked on around-the-clock.

67. Plaintiff believes, and therefore avers that Defendant, Love-Craighead has not required

sick checks, let alone sick checks around-the-clock, on Plaintiff's fellow, male supervisors in the 16th District.

68. Prior to Plaintiff's EEO complaint, Defendant, Love-Craighead had never ordered around-the-clock sick checks on Plaintiff.

69. Plaintiff believes, and therefore avers, that Defendant, Love-Craighead ordered the around-the-clock sick checks on Plaintiff in order to establish pre-tense for a serious reprimand and/or termination.

70. Plaintiff also has been denied use of her vacation time on several occasions despite the complying with 16th District practices.

71. The 16th District practice, concerning approval of vacation time, is to approve an officer's request for vacation time if: (a) the officer has accrued vacation hours; and (b) there is adequate coverage of officers and supervisors on the day requested.

72. On March 28, 2016, Plaintiff requested vacation for June 11-14, 2016. Plaintiff has sufficient accrued vacations hours and there was adequate coverage of officers and supervisors. However, the vacation was denied on the basis that Plaintiff had sufficient vacation already. Plaintiff is not aware of this rationale being used in any other denial.

73. On August 5, 2016, Plaintiff requested vacation for August 21, 2016. Plaintiff has sufficient accrued vacations hours and there was adequate coverage of officers and supervisors. However, Plaintiff did not even receive a response to the written request.

74. Ongoing denials of Plaintiff's vacation requests is a denial of Plaintiff's earned benefits.

75. Despite excellent reviews from her supervisors prior to her EEO complaint, Plaintiff has received "unsatisfactory" reviews since she filed the EEO complaint. For example, Plaintiff's 2017 annual review for the prior year stated in part, "[s]he is not a team player and fosters an

inauspicious work environment amongst her peers and subordinates." The review was written by Defendant, Scott.

76. Plaintiff believes, and therefore avers, that Plaintiff's false and unfounded annual review was caused by Defendant, Love-Craighead in retaliation for Plaintiff's EEO Complaint which brought Internal Affairs attention to Defendants.

77. Defendants have also falsely claimed that Plaintiff was not performing her administrative duties correctly leading to mistakes being made under Plaintiff's command.

78. For example, on April 21, 2016, Defendant, Scott accused Plaintiff of directing officers to go home after finishing court on April 21, 2016, thereby allowing the officers to steal time from the City.

79. However, after Plaintiff was called into Defendant, Love-Craighead office to be reprimanded, Plaintiff pointed out that each officer was in the building, not home.

80. Plaintiff believes, and therefore avers, that Defendant, Scott manufactured the allegations in an attempt to create a pre-tense in order to seriously reprimand or terminate Plaintiff.

81. After Defendant, Love-Craighead was promoted to Inspector, Defendant, Captain Jareau Thomas became the commanding officer of the 16th District.

82. After receiving the "unsatisfactory" review, written by Defendant, Scott in Spring 2017, Plaintiff requested a meeting with Defendant, Thomas regarding the unfounded review.

83. As a result of the meeting, Defendant, Thomas directed Lt. Davis to perform a 3-month evaluation because Defendant, Scott refused to change her unfounded, unsatisfactory reviews of Plaintiff.

84. In or about July 2017, Plaintiff attended a mediation with Defendant, Scott in an effort to resolve the ongoing issues.

85. In or about October 2017, Plaintiff was advised by her supervisor Lt. Davis that the Department's solution was for Defendant, Scott and Plaintiff not to speak – however, such a solution was impossible given that Defendant, Scott is one of Plaintiff's supervisors.

86. On or about October 26, 2017, Plaintiff was advised by Lt. Davis that Plaintiff's immediate request to move to another Platoon in order not to have to work with Defendant, Scott was denied by Defendant, Thomas.

87. On or about January 31, 2018, while Plaintiff was in the women's locker room, taking a personal break because she did not feel well (in accordance with policy and practice), Plaintiff was reviewing and completing patrol logs.

88. Unbeknownst to Plaintiff, Defendant, Scott entered the women's locker room and videotaped Plaintiff. Defendant, Scott then showed the video to Defendant, Thomas.

89. Later, on or about January 31, 2018, Plaintiff was called into Lt. Davis' officer and questioned why Plaintiff was "studying" in the locker room. Lt. Davis told Plaintiff that Defendant, Scott had reported her.

90. Plaintiff explained the foregoing to Lt. Davis – Plaintiff was not studying, but performing work despite taking a person break in conformance with policy and practice.

91. As a result, Lt. Davis called Defendant, Captain Thomas to provide Plaintiff's reasonable explanation of events – while Plaintiff remained in the room. Plaintiff could hear Defendant, Thomas screaming at Lt. Davis, though Plaintiff could not make out the words.

92. After hanging up the phone, Lt. Davis informed Plaintiff that Defendant, Thomas "doesn't want to speak to you… he doesn't want to hear it." Lt. Davis went on to say that Plaintiff had to be careful. Lt. Davis told Plaintiff that Defendant, Thomas had said "disciplinary action will be taken next time."

93. In fact, Lt. Davis told Plaintiff that, despite being told not to tell her, that Defendant, Scott had videotaped Plaintiff in the women's locker room.

94. Plaintiff believes, and therefore avers, that Defendant, Thomas and Defendant, Scott knew that Plaintiff was not studying, but wanted to create a pretense for a serious reprimand and/or termination due to the ongoing lawsuit and the EEO complaint.

95. Plaintiff felt violated and humiliated that she was videotaped while in the privacy of the women's locker room.

96. It is a violation of the Commonwealth of Pennsylvania's laws and public policy to videotape an individual, unbeknownst to that individual in such a private setting.

97. Plaintiff avers that the retaliatory actions taken against Plaintiff after she assisted a fellow officer in filing a sexual harassment complaint would have discouraged a reasonable employee from complaining of sexual harassment.

98. The retaliatory conduct of Defendants', as alleged herein, was severe and/or pervasive enough to make a reasonable person believe that the conditions of employment had been altered and that a hostile work environment existed, and made Plaintiff believe that the conditions of employment had been altered and that a hostile work environment existed.

99. As a direct and proximate result of the retaliatory conduct of Defendants, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

100. Defendants' acted with malice, reckless indifference, and/or deliberate indifference to Plaintiff's protected rights.

101. Despite Plaintiff's efforts to resolve the ongoing issues between herself and her

commanding officers, she continues to experience retaliation for assisting Officer Roseberry in filing her sexual harassment complaint.

## V. COUNTS OF ACTION

### COUNT I
### Violations of Title VII

102. Plaintiff incorporates by reference all prior paragraphs as if fully set forth at length herein.

103. By committing the foregoing acts of discrimination andretaliation against Plaintiff, Defendant has violated TitleVII.

104. Said violations were done with malice and/or reckless indifference, and warrant the imposition of punitive damages.

105. As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

106. Plaintiff is now suffering and will continue to sufferirreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

107. No previous application has been made for the reliefrequested herein.

### COUNT II
### Violation of Section 1983

108. Plaintiff incorporates by reference all prior paragraphs as if fully set forth at length herein.

109. Defendants' retaliatory conduct, as set forth herein, deprived Plaintiff of equal protection under the law as guaranteed by the Fourteenth Amendment of the United States Constitution.

110. As a direct and proximate result of Defendants' acts and conduct which caused and

continue to cause Plaintiff to be denied equal protection under the law, Plaintiff has suffered and will suffer those injuries, damages, and losses alleged herein and has incurred and will incur attorneys' fees and costs.

111. The wrongful acts and conduct of Defendants' were done with deliberate indifference to the statutory and constitutional rights of Plaintiff.

**COUNT III**
**Violations of the Pennsylvania Human Relations Act**

112. Plaintiff incorporates by reference all prior paragraphs as if fully set forth at length herein.

113. Defendants', by the above improper and retaliatory acts, have violated the PHRA.

114. Said violations were intentional and willful.

115. As a direct and proximate result of Defendants' violation of the PHRA, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorneys' fees and costs.

116. Plaintiff is now suffering and will continue to suffer irreparable injuries and monetary damages as a result of Defendants' retaliatory acts unless and until the Court grants the relief requested herein.

117. No previous application has been made for the relief requested herein.

**COUNT IV**
**Violations of the Philadelphia Fair Practices Ordinance**

118. Plaintiff incorporates by reference all prior paragraphs as if fully set forth at length herein.

119. Defendants' by the above improper and retaliatory acts, have violated the PFPO.

120. Said violations were intentional and willful.

121. As a direct and proximate result of Defendant's violation of the PFPO, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorneys' fees and costs.

122. Plaintiff is now suffering and will continue to suffer irreparable injuries and monetary damages as a result of Defendants' retaliatory acts unless and until the Court grants the relief requested herein.

123. No previous application has been made for the relief requested herein.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' improper conduct, and specifically prays that the Court grant the following relief to the Plaintiff by:

a) declaring the acts and practices complained of herein to be in violation of Title VII

b) declaring the acts and practices complained of herein to be in violation of Section 1983;

c) declaring the acts and practices complained of herein to be in violation of the PHRA;

d) declaring the acts and practices complained of herein to be in violation of the PFPO; enjoining and permanently restraining the violations alleged herein;

e) entering judgment against the Defendants and in favor of the Plaintiff in an amount to be determined; awarding compensatory damages to make the Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendants'

improper conduct; awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendants' improper conduct; awarding punitive damages to Plaintiff;

f) awarding Plaintiff such other damages as are appropriate under Title VII, Section 1983, the PHRA and the PFPO;

g) awarding Plaintiff, the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and, granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

Respectfully Submitted,

**WEISBERG LAW**

*/s/ Matthew Weisberg*
Matthew B. Weisberg, Esquire
L. Anthony DiJiacomo, III, Esquire

**SCHAFKOPF LAW, LLC**

*/s/ Gary Schafkopf*
Gary Schafkopf, Esquire

**MILDENBERG LAW FIRM**

*/s/ Brian R Mildenberg*
Brian R. Mildenberg, Esquire

**WEISBERG LAW**
Matthew B. Weisberg
Attorney ID No. 85570
L. Anthony DiJiacomo, III
Attorney ID No. 321356
7 South Morton Ave. 19070
Morton, PA
610-690-0801
Fax: 610-690-0880
*Attorneys for Plaintiff*

**SCHAFKOPF LAW, LLC**
Gary Schafkopf
Attorney ID No. 83362
11 Bala Ave
Bala Cynwyd, PA 19004
610-664-5200 Ext 104
Fax: 888-238-1334
*Attorney for Plaintiff*

**MILDENBERG LAW FIRM**
Brian R. Mildenberg
Attorney ID No. 84861
1735 Market Street, Ste. 3750
Philadelphia, PA 19103
*Attorney for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LATASHA STEVENS**<br>8110 Lindberg Blvd<br>Philadelphia, PA 19153 | : | |
| Plaintiff, | : | No.: 2:17-cv-04852-JD |
| v. | : | |
| **CITY OF PHILADELPHIA,** et al.<br>1515 Arch St, 17th Floor<br>Philadelphia, PA 19102 | : | **JURY TRIAL OF TWELVE (12) JURORS DEMANDED** |
| Defendants. | : | |

**CERTIFICATE OF SERVICE**

I, Matthew B. Weisberg, Esquire, hereby certify that on this 2nd day of February, 2018, a true and correct copy of the foregoing Plaintiff's First Amended Civil Action Complaint was served via ECF upon the following party:

Joseph E. Randall, Esquire
Assistant City Solicitor
1515 Arch St., 16th Fl.
Philadelphia, PA 19102

**WEISBERG LAW**

*/s/ Matthew Weisberg*
Matthew B. Weisberg, Esquire
L. Anthony DiJiacomo, III, Esquire

**SCHAFKOPF LAW, LLC**

*/s/ Gary Schafkopf*
Gary Schafkopf, Esquire

**MILDENBERG LAW FIRM**

*/s/ Brian R Mildenberg*
Brian R. Mildenberg, Esquire